UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| VANESSA ADRIAN, | Case No. 3:16-cv-00425-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| COUNTY OF STOREY, a political subdivision of the State of Nevada, and GERALD ANTINORO, Sheriff of Storey County, and DOES 1-10, inclusive, | |
| Defendants. | |

## I.    SUMMARY

Before the Court is Defendants County of Storey and Sheriff Gerald Antinoro's Motion for Summary Judgment ("Motion"). (ECF No. 22.) The Court has reviewed Plaintiff Vanessa Adrian's response (ECF No. 23) and Defendants' reply (ECF No. 26), as well as Defendants' supplement to their Motion (ECF No. 29). The Court construes Defendants' Motion as a partial motion for summary judgment because it does not address all of Plaintiff's claims. So construed, the Court grants Defendants' Motion for the reasons discussed below.

## II.    BACKGROUND

The following facts come from Plaintiff's Complaint (ECF No. 1-1) unless noted otherwise.

Plaintiff, a woman, is a former peace officer for the Storey County Sheriff's Office. While the Complaint could have more clearly articulated her claims, the Complaint does

allege that "Storey County has discriminated against [Plaintiff] based on her gender in violation of Title VII of the Civil Rights Act, subjected her to harassment and sexual harassment, and retaliated against her for her complaints of harassment and discrimination." (ECF No. 1-1 at 12.) Thus, liberally construed, the Complaint alleges three claims under Title VII—hostile work environment, disparate treatment, and retaliation. Defendants' Motion seeks summary judgment as to two claims of these claims—hostile work environment and disparate treatment.[1] (*See* ECF No. 22.)

### A. Hostile Work Environment

Plaintiff alleges that she endured a hostile work environment due to her colleagues' unwelcome remarks based on her gender, some of which were overtly sexual. In total, Plaintiff alleges five episodes of harassment occurring between the summer of 2007 and April 11, 2012. The first instance of alleged harassment occurred in the summer of 2007 when Anthony Dosen, an investigator sergeant, was taking a urine sample from a male inmate and asked Plaintiff, "Do you want to hold it [the inmate's penis] for him?" (ECF No. 1-1 at 4.) The second occurred in October 2009 when Lance Andres, a colleague who trained alongside Plaintiff to be a detention officer, made unspecified comments about her stature and gender. The third occurred in 2010 when Anthony Francone, a shift corporal, remarked, "If I ever do leave my wife, you are plan B." (*Id.*) The fourth occurred in September 2011 when Andres was training Plaintiff to be a patrol officer. Andres allegedly addressed Plaintiff as "woman" and made the following remarks to her: "Geez, you are driving all over the place, woman;" "You have a small frame;" "Your voice is too soft. You need to be more aggressive;" and "We need to work on your officer safety because you are so small." (*Id.* at 5.) The fifth occurred on April 11, 2012, when Andres commented during a remedial training session, "Hey sweetie, your keepers are undone." (*Id.* at 8.) Plaintiff's Complaint does not include allegations of any physical or verbal conduct of a sexual nature occurring after April 11, 2012.

---

[1]In response, Plaintiff does not allege that she is also asserting a retaliation claim. Thus, it is not clear to the Court whether Plaintiff is pursuing a retaliation claim.

## B. Disparate Treatment

The Complaint appears to allege two discrete acts of disparate treatment: her termination and the temporary revocation of her driving privileges. (*See* ECF No. 1-1 at 12; ECF No. 22 at 11-12.)

Plaintiff's driving privileges were revoked on June 14, 2012. Sheriff Antinoro informed Plaintiff that her driving privileges were revoked because she failed to demonstrate the ability to operate a patrol vehicle under conditions that could arise in the line of duty. (ECF No. 22-1 at 74.) Plaintiff contends that her driving privileges were actually revoked on the basis of her sex. Plaintiff's driving privileges were reinstated around August 8, 2012.

Plaintiff was terminated effective October 24, 2012. (ECF No. 22-1 at 78.) Plaintiff received a letter stating that she was terminated for violating several policies in connection with the escape of an inmate. (*See id.* at 77-78.) Plaintiff contends that she was actually fired because of her sex.

## III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a dispute is material if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is not appropriate when "reasonable minds could differ as to the import of the evidence." *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is [that which is] enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). Decisions granting or denying summary judgment are made in light

of the purpose of summary judgment: "to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008). If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

The Court will address Plaintiff's hostile work environment claim before addressing her disparate treatment claim.

### A. Hostile Work Environment

Plaintiff alleges that her former colleagues subjected her to a hostile work environment by making sexual and disparaging remarks based on her sex. (*See* ECF No. 1-1 at 12.) Plaintiff also contends that her termination and the temporary revocation of her

4

driving privileges are acts that give rise to a hostile work environment. (*See* ECF No. 23 at 2-3.)

Taking the latter acts first, Plaintiff's termination and the temporary revocation of her driving privileges do not give rise to a hostile work environment claim. A hostile work environment comprises unwelcome verbal or physical conduct—not prototypical adverse employment actions such as termination and loss of privileges. *Matson v. United Parcel Serv., Inc.*, 872 F. Supp. 2d 1131, 1141 (W.D. Wash. 2012) ("Unlike a disparate treatment claim, which requires an adverse employment action, a hostile work environment claim focuses on the cumulative effect of a series of actions, where the individual actions are not adverse employment actions."); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).

Turning to Plaintiff's allegations about sexual and disparaging remarks based on her sex, Defendants argue that a claim based on these allegations is time-barred. (ECF No. 22 at 9-10.) Discrimination claims under Title VII must be filed with the EEOC within 180 days of the date on which the alleged discriminatory practice occurred unless the plaintiff institutes proceedings with an equivalent state or local agency first. *Gross v. Hous. Auth. of the City of Las Vegas*, No. 2:11-cv-1602-JCM-CWH, 2014 WL 7014466, at *6 (D. Nev. Dec. 11, 2014) (citing 42 U.S.C. § 2000e-5(e)(1)). While Nevada has such an agency—the Nevada Equal Rights Commission—Plaintiff did not initiate proceedings with it.[2] Accordingly, the 180-day statute of limitations applies.

Construing the facts in the light most favorable to Plaintiff, it is conceivable that Plaintiff filed her charge of discrimination within 180 days of the most recent alleged instance of harassment—Andres's remark on April 11, 2012, that Plaintiff's keepers were undone. The exact date that Plaintiff filed her charge of discrimination with the EEOC does not appear in the record before the Court, though Defendants have produced evidence that they received notice of Plaintiff's charge on November 8, 2012. (ECF No. 29-1 at 15.)

---

[2] Defendants assert that Plaintiff did not first file a charge with the Nevada Equal Rights Commission. (ECF No. 22 at 9.) Plaintiff does not dispute this in her response.

5

It is possible that Plaintiff filed the charge of discrimination on October 8, 2012 (180 days after Andres's remark) and that Defendants did not receive notice from the EEOC until a month later, on November 8, 2012.

Assuming that the most recent instance of harassment falls within the relevant time period, the next question is whether all the alleged instances of harassment together form one unlawful employment practice. A series of non-discrete acts that form one unlawful employment practice can serve as the basis of a hostile work environment claim even if some of the non-discrete acts occurred outside the relevant time period. *See Porter*, 419 F.3d at 893. "[T]o determine whether all of these events constitute 'one unlawful employment practice,' we consider whether they were 'sufficiently severe or pervasive,' and whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Id.* (quoting *Nat'l R.R.*, 536 U.S. at 118).

Plaintiff alleges five episodes of harassment. Three can be attributed to Andres, and one each to Dosen (who asked Plaintiff if she would hold an inmate's penis) and Francone (who told Plaintiff she was his "plan B"). The Court finds that the Dosen and Francone incidents do not form one unlawful employment practice with the Andres incidents, even viewing the facts in the light most favorable to Plaintiff. With respect to the Dosen incident, more than two years elapsed before any of the other alleged instances of harassment occurred. As for the Francone incident, it occurred in a different year than any of the other alleged incidents, and Plaintiff has not alleged or suggested a connection to the other incidents.

The remaining three episodes (all attributable to Andres) are not sufficiently severe or pervasive to give rise to Title VII liability even if they form one unlawful employment practice. "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

*Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).

Andres's alleged comments are analogous to those found insufficiently severe or pervasive in *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000). In *Kortan*, the Ninth Circuit found that harassment was not severe or pervasive when the plaintiff's supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea." *Id.* Just as the supervisor in *Kortan* referred to the plaintiff by a name other than her own in an apparent attempt to demean and belittle her, Andres allegedly referred to Plaintiff as "woman" instead of her name. Hurtful and mean-spirited though this may be, it does not come within the ambit of Title VII. Moreover, Andres's alleged comments may be less severe than those of the supervisor in *Kortan* because Andres did not use expletives.

The frequency of Andres's comments is also similar to the frequency of comments made in *Vasquez*, 349 F.3d at 643. There, the plaintiff's claim arose from statements by a supervisor that the plaintiff had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field." *Id.* The Court found that these statements were not severe or pervasive enough to violate Title VII in part because the statements were made more than six months apart. *See id.* Here, Andres's remarks were also separated by lengthy periods of time—they were made in October 2009, September 2011, and April 2012. (ECF No. 1-1 at 4, 5, 8.) The length of time between Andres's remarks tends to show that his allegedly harassing conduct was not pervasive.

Accordingly, the Court will grant summary judgment in favor of Defendants as to Plaintiff's hostile work environment claim.

///

7

## B. Disparate Treatment

Plaintiff seems to allege disparate treatment based on two adverse actions: termination and temporary revocation of her driving privileges. (*See* ECF No. 1-1 at 12; ECF No. 22 at 11-12.)

### 1. Termination

Defendants argue that Plaintiff was terminated because she failed to follow certain policies that resulted in the escape of an inmate, not because of her sex. (ECF No. 22 at 11.) Defendants also argue that "Plaintiff cannot demonstrate that she was discriminated [against] based on her gender as a result of her termination given that a fellow male deputy, Dan Brown, was also terminated as a result of the [inmate] escape." (*Id.* at 12.) Defendants have produced evidence to support this contention, such as Plaintiff's deposition testimony (*id.* (citing ECF No. 22-1 at 41)) and the termination letter Plaintiff received (*id.* (citing ECF No. 22-1 at 77-78)).

In her response, Plaintiff does not counter these arguments, nor does she produce any evidence to create a genuine issue of material fact as to whether she was terminated on the basis of her sex or to show that the proffered reason for her termination was a pretext for gender discrimination. (*See* ECF No. 23.) While Plaintiff alleges in her Complaint that Francone (who told Plaintiff that she was his "plan B") was not terminated or disciplined when an inmate escaped during a transport operation he supervised (ECF No. 1-1 at 11), Plaintiff has failed to produce any specific evidence, through affidavits or admissible discovery material, to support this allegation.

Thus, Plaintiff's disparate treatment claim based on her termination cannot proceed to trial under either of the two frameworks Plaintiff may use to establish her case. "[W]hen responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish . . . her case." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). The plaintiff "may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."

*Id.* Under either framework, Plaintiff ultimately must produce some evidence of a discriminatory intent. Here, Plaintiff has produced none.

## 2. Revocation of Driving Privileges

Viewing the facts in the light most favorable to Plaintiff, Plaintiff has produced circumstantial evidence from which a jury could infer that her driving privileges were revoked based on her sex rather than her driving ability: Plaintiff alleges that she successfully completed a driving training six months before her driving privileges were revoked. (ECF No. 23 at 7.) However, "[w]here evidence of pretext is circumstantial, rather than direct, the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)). Plaintiff's allegation does not constitute substantial circumstantial evidence, particularly in light of Defendants' contention that Plaintiff had a history of issues relating to driving patrol vehicles throughout her employment with the Storey County Sheriff's Office. (ECF No. 26 at 5 (citing ECF No. 22 at 12-13); *see also* ECF No. 23 at 3 ("Plaintiff admits that she had difficulty completing the driving training conducted by her Field Training Officers . . . .").)

Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiff's disparate treatment claim.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendants' Motion for Summary Judgment (ECF No. 22) is granted.

It is further ordered that Defendants' Motion to Supplement (ECF No. 29) is granted.

Given that this order may affect Plaintiff's retaliation claim, the parties are to file a joint status report within five (5) days to notify the Court whether Plaintiff seeks to assert

a retaliation claim. If so, the joint status report should address whether that claim should be set for trial.

DATED THIS 21st day of March 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE